

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00593-CV

**IN THE INTEREST OF B.B.M.M.**, a Child,

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01403
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Adrian A. Spears II, Justice

Sitting:         Lori Massey Brissette, Justice
                Adrian A. Spears II, Justice
                H. Todd McCray, Justice

Delivered and Filed: March 5, 2025

AFFIRMED

Mother[1] appeals from the trial court's judgment terminating her parental rights to her child,

B.B.M.M. We affirm.

### BACKGROUND

On September 18, 2023, the Texas Department of Family and Protective Services ("the

Department") filed the underlying suit to terminate Mother's parental rights, along with an

affidavit in support of emergency removal of B.B.M.M. The trial court granted the request for

---

[1]To protect the identity of the minor child, we refer to the child and the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

emergency removal and appointed the Department B.B.M.M.'s temporary sole managing conservator. The Department then placed B.B.M.M. in a licensed foster home.

Almost a year later, the trial court held a bench trial. The Department's evidence showed that B.B.M.M. was born with amphetamines in his system. Shortly after B.B.M.M. was born, a Department caseworker visited Mother and B.B.M.M. at the hospital. Mother told the caseworker that she did not obtain prenatal care for B.B.M.M. because she did not know she was pregnant. When it was time for B.B.M.M. to be discharged from the hospital, Mother was not ready to care for him. Mother told the caseworker she was living in a particular apartment in a complex, but when the caseworker went there, the apartment appeared to be abandoned. Mother then told the caseworker that she was living in a different apartment in the same complex with a friend, who was her source of income. When the caseworker visited with this friend, the friend appeared to be under the influence of some substance and the condition of his apartment was not appropriate for B.B.M.M. Basic requirements—a crib and food—were absent. This friend told the caseworker that he did not want to be providing for Mother and B.B.M.M. Additionally, Mother had a history with the Department. Just three months before B.B.M.M.'s birth, Mother's parental rights to two other children had been terminated.

After B.B.M.M.'s removal, the Department prepared a service plan for Mother. The caseworker explained the service plan to Mother, who understood its requirements. The service plan required Mother to complete a drug assessment, drug treatment, drug testing, individual counseling, and parenting classes, and to obtain stable housing. Mother initiated services with SACADA, which provides drug treatment and parenting classes, but she only did the intake process. For the most part, Mother failed to engage in these services. Mother completed the drug assessment, but she did not begin drug treatment. Mother never submitted to drug testing. Under

the trial court's temporary orders, Mother was permitted to have supervised visits with B.B.M.M. once per week, but she only visited B.B.M.M. once. Although the caseworker provided Mother with the names of organizations that could assist her in obtaining housing, Mother never demonstrated to the caseworker that she had secured stable housing. Mother told the caseworker that she was living with a friend, but she refused to allow the caseworker to meet her at this friend's home. Instead, Mother always arranged to meet the caseworker at a convenience store. Mother provided no explanation for her failure to engage in the services in her service plan; instead, Mother repeatedly assured the caseworker that she was going to start engaging in services. Eventually, Mother stopped communicating with the caseworker altogether.

With regard to the child, B.B.M.M. did not immediately show signs of drug withdrawal, but he did eventually suffer from withdrawal symptoms for which he received medical treatment. By the time of trial, B.B.M.M., who was almost a year old, was healthy and doing well. He was receiving regular physical, occupational, and speech therapy. B.B.M.M. had been living in the same foster home since his removal. The caseworker characterized this placement as a "loving home." The Department's initial permanency goal for B.B.M.M. was reunification with Mother, but because of Mother's lack of engagement, her failure to demonstrate her sobriety, and her unwillingness to address the Department's safety concerns, the Department changed its permanency goal to adoption by a nonrelative.

Mother testified on her own behalf. Mother disputed that she was unable to care for B.B.M.M. at the beginning of the case, claiming that she bought food, clothes, and a bassinet for him. Mother admitted she only visited B.B.M.M. once. Mother said she tried to visit B.B.M.M. a few other times, but she arrived too late for these visits. As for the services in her service plan, Mother claimed that she was unable to finish the drug treatment intake process because she lost

her phone. Mother also claimed she had started individual counseling, and she asked the trial court to give her more time to complete her services. Mother acknowledged that she was in jail awaiting trial on a misdemeanor criminal trespass charge. She had been in jail for about thirty days. Because of her incarceration, Mother was currently unable to care for B.B.M.M., but she claimed she had an aunt who was willing to help her with B.B.M.M.

After hearing the evidence, the trial court terminated Mother's parental rights under subsections 161.001(b)(1)(D),(E),(M),(N),(O),(P), and (R) of the Texas Family Code. The trial court also found that termination of Mother's parental rights was in B.B.M.M.'s best interest. *See* TEX. FAM. CODE § 161.001(b)(2). Mother appealed.

### SUFFICIENCY OF THE EVIDENCE

In her sole issue, Mother argues the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights is in B.B.M.M.'s best interest.

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated under at least one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. TEX. FAM. CODE § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed

a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

There is a presumption that the child's best interest is served by keeping him with his parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, there is also a presumption that the prompt and permanent placement of the child in a safe environment is in his best interest. TEX. FAM. CODE § 263.307(a). When determining if a parent is willing and able to provide a child with a safe environment, the trial court should consider the relevant factors contained in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[2] A factfinder may also consider the factors articulated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] "The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship." *In re E.A.R.*, 672 S.W.3d 716, 721–22 (Tex. App.—San

---

[2]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurture, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

Antonio 2023, pet. denied). The predicate grounds for termination may also be probative of the child's best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Furthermore, in determining whether termination of the parent-child relationship is in the child's best interest, a factfinder may judge a parent's future conduct by her past conduct. *In re Z.R.M.*, 665 S.W.3d 825, 829 (Tex. App.—San Antonio 2023, pet. denied).

A parent's illegal drug use supports a finding that termination of the parent-child relationship is in the best interest of the child. *In re A.M.O.*, No. 04-17-00798-CV, 2018 WL 2222207, at *2 (Tex. App.—San Antonio May 16, 2018, no pet.). Here, the undisputed evidence showed that B.B.M.M. was born with amphetamines in his system. Mother's parental rights were terminated on two predicate grounds directly related to her illegal drug use. First, the trial court found that Mother had "been the cause of the child being born addicted to alcohol or a controlled substance, other than a controlled substance legally obtained by prescription." *See* TEX. FAM. CODE § 161.001(b)(1)(R). Second, the trial court found that Mother had "used a controlled substance . . . in a manner that endangered the health or safety of the child and . . . failed to complete a court-ordered substance abuse treatment program." *See id*. § 161.001(b)(1)(P). These predicate findings, which Mother has not challenged on appeal, are probative of B.B.M.M.'s best interest. *See In re C.H.*, 89 S.W.3d at 28 (stating predicate grounds may also be probative of best interest).

The trial court may also consider a parent's failure to complete a court-ordered service plan in determining a child's best interest. *In re Z.R.M.*, 665 S.W.3d at 830. Here, Mother's service plan required her to complete a drug treatment program, but by the time of trial Mother had not even started a drug treatment program. Mother's service plan also required her to complete parenting classes, but by the time of trial Mother had not even started parenting classes. Mother's service plan further required her to engage in individual counseling until successfully discharged by the

counselor, but even according to her own testimony Mother had only "started" individual counseling. In fact, by the time of trial, Mother had not completed any of the services in her service plan. Mother's failure to engage in and complete the services in her court-ordered service plan demonstrated her unwillingness or inability to make the positive environmental and personal changes necessary to provide B.B.M.M. with a safe environment. *See* TEX. FAM. CODE § 263.307(b)(11).

Evidence of a parent's unstable lifestyle can support a finding that termination of parental rights is in the child's best interest. *In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.). This is true because a lack of stability, including the absence of a stable home, supports a finding that the parent is unable to provide for a child's emotional and physical needs. *Id*. Here, the evidence showed that Mother did not have a stable home for B.B.M.M. when he was born. While at the hospital, Mother told the caseworker that she and B.B.M.M. were going to live with a friend, but this friend told the caseworker that he did not want them living with him. After B.B.M.M.'s removal, the caseworker provided Mother with the names of organizations that could assist her in obtaining housing. Later in the case, Mother would not allow the caseworker to visit the friend's home where she claimed to be living. From this evidence, the trial court could have determined that Mother demonstrated inadequate parenting skills based on her unwillingness or inability to provide B.B.M.M. with a safe physical home environment. *See* TEX. FAM. CODE § 263.307(b)(12)(D).

"When a child is too young to express his desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent." *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). Here, the evidence showed that Mother spent almost no time with B.B.M.M., having visited with

him only once since his removal. The evidence further showed that B.B.M.M. was living in a loving home—the only home he had known for his entire life—with a foster parent who wanted to adopt him.

After reviewing all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that the termination of Mother's parental rights was in B.B.M.M.'s best interest. Additionally, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is not so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of Mother's parental rights was in B.B.M.M.'s best interest. Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We affirm the trial court's judgment terminating Mother's parental rights.

Adrian A. Spears II, Justice